**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

CARMELA GIORDANO GUGGINO,

                                   Plaintiff,

                                                              **REPORTAND**
                                                              **RECOMMENDATION**

          -against-
                                                              20-CV-00399 (JMA) (ST)

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

                                   Defendant.
-----------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

          Pursuant to 42 U.S.C. § 405(g) as incorporated by 42 U.S.C. § 1383(c)(3), Plaintiff

Carmela Giordano Guggino ("Plaintiff") appeals the final decision of the Commissioner of

Social Security Administration (the "Commissioner") which found that she was not disabled

within the meaning of the Social Security Act (the "Act"), thereby denying her application for

supplemental security income ("SSI"). *See generally* Compl., ECF No. 1.  Both parties have

moved for a judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  *See*

Pl.'s 12(c) Mot., ECF No. 11; *see* Def.'s Opp'n and Cross Mot., ECF No. 10[2].  On May 25,

2021, the Honorable Joan M. Azrack referred the motions to me for a report and

recommendation. *See* Order, 20-cv-00399 (E.D.N.Y. May 25, 2021).  For the reasons stated

below, I recommend that the Plaintiff's motion be GRANTED, to the extend that this case be

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Dr. Kilolo Kijakazi is now the Acting Commissioner of Social Security and is automatically substituted as a party.

[2] The submissions in this case were filed with the Court as follows: Plaintiff's Motion (ECF No. 11), Defendant's Opposition and Cross Motion (ECF No. 10), and Plaintiff's Reply (ECF No. 12).  In citations to those documents where page numbers are references, they refer to the ECF page number at the top of each page.

remanded to the ALJ, and the Commissioner's cross motion be DENIED.

## I.    BACKGROUND

On September 8, 2016, Plaintiff filed an application for SSI benefits. *See* Compl. ¶ 6, ECF No. 1.  In her application, Plaintiff alleged that she became disabled and unable to work on or about September 24, 2009 due to degenerative disc disease of the cervical spine, status post laminectomy, degenerative disc disease of the lumbar spine, status post laminectomy and fusion, and a left shoulder derangement. *See id*. ¶ 4-5.  That claim was initially denied on October 31, 2016. *See* Admin. Tr. ("Tr.") at 10, ECF No. 14.  Plaintiff timely filed a written request for a hearing on December 19, 2016. *See* Compl. ¶ 7; *see* Tr. at 10.

On November 16, 2018, Plaintiff appeared in Central Islip, New York, for a hearing before Administrative Law Judge (ALJ) John Loughlin, who himself appeared by video from Alexandria, Virginia. *See* Tr. at 10.  At the hearing, the ALJ heard testimony from a Vocational Expert ("VE") Barry J. Brown, and from Plaintiff herself.  Also included in the record were, *inter alia*: a single medical record from a consultative internal medicine examination ("CE") by Dr. Kanista Basnayke (Tr. at 349-353); extensive treatment records from Plaintiff's treating neurologist, Dr. Jacob Mathew (Tr. at 25-64, 262-348, 380-385, 398-564) along with a Medical Assessment of Ability to do Work Related Activities (Tr. at 565-566); treatment records from a spinal fusion surgery performed by Dr. Michael A. Lefkowitz (Tr. at 357-379); and treatment records from a lipoma[3] removal surgery performed by Dr. Thomas Gerold (Tr. at 386-397).  Notably, at least as early as April 2011, Dr. Mathew determined that the Plaintiff "was totally disabled and that her impairment was permanent." *See* Tr. at 16.

---

[3] A lipoma is "[a] benign fatty tumor [that] often appear[s] in crops on the arms or trunk but are not metastatic." *See* Taber's Medical Dictionary, 24th ed. (Donald Venes, ed., F.A. Davis Company, 2021).

On December 6, 2018, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act. *See* Tr. at 10. Thereafter, Plaintiff timely requested a review of the ALJ's decision by the Appeals Council, who denied her request for review on November 27, 2019, thus making the ALJ's decision the final decision of the Commissioner. *See* Compl. ¶ 10-11, Ex. A; *see* Def.'s Opp'n and Cross Mot. at 8. Accordingly, Plaintiff filed this action requesting court review of the ALJ's decision on January 24, 2020. *See generally* Compl.

On September 4, 2020, the Plaintiff filed this motion for judgment on the pleading pursuant to Federal Rule of Civil Procedure 12(c). *See* Pl.'s 12(c) Mot. Also filed on that day was the Commissioner's opposition and cross motion, as well as Plaintiff's reply and opposition to the cross motion. *See* Def.'s Opp'n and Cross Mot.; *see* Pl.'s Reply, ECF No. 12. On May 25, 2021, the Judge Azrack referred the motions to me for a report and recommendation. *See* Order, 20-cv-00399 (E.D.N.Y. May 25, 2021).

## II.    STANDARD OF REVIEW

### A.    District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citation omitted); *see also* 42 U.S.C. § 405(g). A decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a mere scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Caraballo v. Comm'r of Soc. Sec.*, No. 19-CV-1160 (MKB), 2020 WL 9816013, at *6 (E.D.N.Y. Nov. 30, 2020) (internal quotation marks and citations omitted). It is not the Court's function to "determine de novo whether [the claimant] is disabled."

3

*Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (citation omitted). "The Commissioner's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Caraballo,* 2020 WL 9816013, at * 6 (citing *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)). Accordingly, the Court must determine whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal* 134 F.3d at 501 (quoting *Beauvoir v. Chater,* 104 F.3d 1432, 1433 (2d Cir.1997)); *see* 42 U.S.C. § 405(g).

**B.     Disability Determination**

"To be disabled under the Act and therefore entitled to benefits, a claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted). "Furthermore, an individual's impairment must be of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Rosa*, 168 F.3d at 77 (quoting 42 U.S.C. § 423(d)(2)(A)) (internal quotation marks omitted).

The SSA has promulgated regulations establishing a five-step procedure for evaluating disability claims. *See* 20 C.F.R. §§ 404.1520, 416.920. The Second Circuit has summarized this evaluative process as follows:

> "The first step of this process requires the [Commissioner] to determine whether the claimant is presently employed. If the claimant is not employed, the [Commissioner] then determines whether the claimant has a "severe impairment" that limits her capacity to work. If the claimant has such an impairment, the [Commissioner] next considers whether the claimant has an impairment that is listed in Appendix 1 of the regulations. When the claimant has such an impairment, the [Commissioner] will find the claimant disabled. However, if the claimant does not have a listed impairment, the [Commissioner] must determine, under the fourth step, whether the claimant possesses the residual functional capacity to perform her past relevant work. Finally, if the claimant is unable to perform her past relevant work, the [Commissioner] determines whether the claimant is capable of performing any other work."

*Johnson v. Astrue*, 811 F. Supp. 2d 618, 627 (E.D.N.Y. 2011) (quoting *Brown v. Apfel,* 174 F.3d 59, 62 (2d Cir.1999)) (citation omitted). "The claimant bears the burden of proof with regard to the first four steps; the Commissioner bears the burden of proving the last step." *Id.*

In determining a claimant's entitlement to benefits, the ALJ must consider: "(1) objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; (4) the claimant's educational background, age, and work experience." *Johnson* 811 F. Supp. 2d at 628 (quoting *Brown* 174 F.3d. at 62) (citation omitted).

## III.    DISCUSSION

### A.    The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since September 8, 2016, the date of her application for SSI benefits. Tr. at 12.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "left shoulder degenerative joint disease; degenerative disc disease of the lumbar spine, status-post laminectomy and fusion; and degenerative disc disease of the cervical spine, status-post laminestomy." *Id.* Moreover, the ALJ found that those medically determinable impairments "significantly limit the ability to perform basic work activities as required by [the Social Security Rulings]." *Id.* The ALJ also found that Plaintiff's history of hypertension and removal of a lipoma from her back were non-severe impairments, and, albeit with "no objective evidence to establish headaches as an independent medially determinable impartment … [the ALJ] credited the [Plaintiff's] reports that her neck pain causes headaches and accounted for headaches in the residual functional capacity." *Id.* at 13.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing[4]. *Id.* In reaching his conclusion, the ALJ considered the criteria of Listing 1.02 in reference to Plaintiff's left shoulder impairment and Listing 1.04 in reference to Plaintiff's cervical and lumbar impairments. *Id.*

Before moving to step four, the ALJ determined that Plaintiff retained the following residual functional capacity ("RFC"):

> "[the] perform[ance] [of] light work as defined in [20 C.F.R. § 416.967(b)] except she can frequently push or pull and reach overhead with both upper extremities … occasionally push or pull or operate foot controls with both lower extremities … occasionally kneel, crouch, stoop, [] crawl … occasionally climb stairs and ramps … occasionally climb ladders, ropes, and scaffolds, and … occasionally be exposed to vibrations, unprotected heights, and moving machinery parts."

---

[4] A Listing refers to one of the listed impairments in Appendix 1 of Subpart P of Regulation No. 4. *See* 20. § 404.1520(d); *See Ellen Kathleen H. v. Comm'r of Soc. Sec.*, 516 F. Supp. 3d 329, 333 (W.D.N.Y. 2021).

Tr. at 13.  The ALJ also noted that Plaintiff "requires a moderate noise work environment, as defined in the [Dictionary of Occupational Titles] and [Selected Characterizations of Occupations]." *Id.*  Notably, the ALJ found that the Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record…." *Id.* at 14.

At step four, the ALJ found that Plaintiff had no past relevant work, thus requiring analysis under step five. *Id.* at 17.  At step five, the ALJ relied on the testimony of the VE to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of merchandise marker, routing clerk, and housekeeping cleaner. *Id.* at 17-18.  Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. *Id.* at 18.

### B.    Duty to Develop the Record

"Social Security proceedings are inquisitorial rather than adversarial." *Sims v. Apfel,* 530 U.S. 103 (2000).  Consequently, "the social security ALJ, unlike a judge in a trial, must on behalf of all claimants ... affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Moran v. Astrue,* 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks and citation omitted).  As part of this duty, the ALJ must "investigate the facts and develop the arguments both for and against granting benefits." *Sims,* 530 U.S. at 111.  Specifically, under the applicable regulations, the ALJ is required to develop a claimant's complete medical history. *Pratts v. Chater,* 94 F.3d 34, 37 (2d Cir. 1996) (citing 20 C.F.R. §§ 404.1512(d)–(f)).  This

responsibility "encompasses not only the duty to obtain a claimant's medical records and reports but also the duty to question the claimant adequately about any subjective complaints and the impact of the claimant's impairments on the claimant's functional capacity." *Pena v. Astrue,* No. 07–CV–11099 (GWG), 2008 WL 5111317, at *8 (S.D.N.Y. Dec. 3, 2008) (citations omitted).

"Whether the ALJ has met his duty to develop the record is a threshold question." *Craig v. Comm'r of Soc. Sec.*, 218 F. Supp. 3d 249, 261 (S.D.N.Y. 2016). "Before reviewing whether the Commissioner's final decision is supported by substantial evidence under 42 U.S.C. § 405(g), the court must first be satisfied that the ALJ provided plaintiff with a full hearing under the Secretary's regulations and also fully and completely developed the administrative record." *Id.* (citing *Scott v. Astrue,* No. 09–CV–3999 (KAM), 2010 WL 2736879, at *12 (E.D.N.Y. July 9, 2010) (quoting *Echevarria v. Sec'y of Health & Human Servs.,* 685 F.2d 751, 755 (2d Cir. 1982)); *see also Rodriguez v. Barnhart,* No. 02–CV–5782 (FB), 2003 WL 22709204, at *3 (E.D.N.Y. Nov. 7, 2003) ("The responsibility of an ALJ to fully develop the record is a bedrock principle of Social Security law.") (citing *Brown v. Apfel,* 174 F.3d 59 (2d Cir. 1999)). "Remand is appropriate where this duty is not discharged." *Craig* 218 F. Supp. 3d at 261 (citing *Moran,* 569 F.3d at 114–15 ("We vacate not because the ALJ's decision was not supported by substantial evidence but because the ALJ should have developed a more comprehensive record before making his decision.")).

### a. Treating Physician Rule

Beginning at least as early as April 2011, Dr. Mathew has opined that Plaintiff was totally and permanently disabled. *See* Tr. at 16; *see* Pl.'s 12(c) Mot. at 12. In reviewing this opinion, the ALJ gave it "little weight." Tr. at 16. Accordingly, Plaintiff argues that the ALJ did not accord the opinion of Dr. Mathew proper weight under the treating physician rule. Pl.'s 12(c) Mot. at 20-21. In opposition, the Commissioner contends that the ALJ adequately supported his

determination with "good reasons." Def.'s Opp'n and Cross Mot. at 29.

Plaintiff's claim was filed before March 27, 2017, therefore the ALJ was required to apply the treating physician rule, under which a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. § 404.1527(c)(2). "A treating physician is the claimant's own physician, osteopath or psychologist (including outpatient clinic and health maintenance organization) who has provided the individual with medical treatment or evaluation, and who has or who had an ongoing treatment and physician-patient relationship with the individual." *Jones v. Apfel*, 66 F. Supp. 2d 518, 525 (S.D.N.Y. 1999) (internal quotation marks omitted) (citing *Schisler v. Bowen*, 851 F.2d 43, 47 (2d Cir. 1988). "[A] treating physician's statement that the claimant is disabled cannot itself be determinative." *Caraballo,* 2020 WL 9816013, at * 7 (collecting cases). "However, an ALJ must follow specific procedures in determining the appropriate weight to assign a treating physician's opinion." *Id.* (citing *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019)); *see also Ferraro v. Saul*, 806 F. App'x 13, 14 (2d Cir. 2020) (holding that "[u]nder Second Circuit precedent and the applicable regulations," the ALJ must follow the two-step procedure laid out in *Estrella* to determine the appropriate weight to assign to the opinion of a treating physician).

"First, the ALJ must decide whether the opinion is entitled to controlling weight." *Caraballo,* 2020 WL 9816013, at * 7 (citing *Estrella* 925 F.3d at 95). "The opinion of a claimant's treating physician as to the nature and severity of an impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *Id.; see also Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011) ("The opinion of a treating physician is accorded

9

extra weight because the continuity of treatment he provides and the doctor/patient relationship he develops place[s] him in a unique position to make a complete and accurate diagnosis of his patient.") (citation omitted).

"Second, if the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it." *Caraballo,* 2020 WL 9816013, at * 8 (citing *Estrella* 925 F.3d at 95. When considering how much weight to give the treating physician's opinion, the ALJ "must 'explicitly consider' the … nonexclusive" factors contained in *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). *See Estrella* 925 F.3d at 95. The *Burgess* factors are: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Id.* at 95–96 (quoting *Selian*, 708 F.3d at 418); *see also Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam) (citing 20 C.F.R. § 404.1527(d)(2)) (discussing the factors).

"At both steps, the ALJ must 'give good reasons ... for the weight [it gives the] treating source's [medical] opinion.'" *Estrella*, 925 F.3d at 96 (quoting *Halloran*, 362 F.3d at 32). "A failure to explicitly consider these factors is a procedural error warranting remand unless a searching review of the record assures the reviewing court that the substance of the treating physician rule is not traversed." *Guerra v. Saul*, 778 F. App'x 75, 77 (2d Cir. 2019) (citing *Estrella* 925 F.3d at 95) (internal quotation marks omitted). "If the Commissioner has not [otherwise] provided good reasons [for its weight assignment], the district court is unable to conclude that the procedural error is harmless, and remand is therefore appropriate, so that the ALJ can comprehensively set forth [its] reasons." *Caraballo,* 2020 WL 9816013, at * 8 (alterations in original) (internal quotation marks and citation omitted). "However, if a searching review of the

10

record assures the court that the substance of the treating physician rule was not traversed, the court will affirm." *Id.* (internal quotation marks and citations omitted). "To put it simply, a reviewing court should remand for failure to explicitly consider the *Burgess* factors unless a searching review of the record shows that the ALJ has provided 'good reasons' for its weight assessment. *Guerra* 778 F. App'x at 77 (quoting *Estrella* 925 F.3d at 95).

"To the extent that [the] record is unclear, the Commissioner has an affirmative duty to 'fill any clear gaps in the administrative record' before rejecting a treating physician's diagnosis." *Selian,* 708 F.3d at 420 (quoting *Burgess,* 537 F.3d at 129); *see Schaal v. Apfel,* 134 F.3d 496, 505 (2d Cir. 1998) (discussing ALJ's duty to seek additional information from treating physician if clinical findings are inadequate). "As a result, the treating physician rule is inextricably linked to a broader duty to develop the record … [p]roper application of the rule ensures that the claimant's record is comprehensive, including all relevant treating physician diagnoses and opinions, and requires the ALJ to explain clearly how these opinions relate to the final determination." *Craig* 218 F. Supp. 3d at 262-263 (quoting *Lacava v. Astrue,* No. 11–CV–7727 (WHP) (SN), 2012 WL 6621731, at *13 (S.D.N.Y. Nov. 27, 2012) ("In this Circuit, the [treating physician] rule is robust."), *report and recommendation adopted,* 2012 WL 6621722 (S.D.N.Y. Dec. 19, 2012).

Here, the ALJ notes Dr. Mathew as a treating source. Tr. at 16. Therefore, the ALJ must follow the two-step procedure laid out in *Estrella* to determine the appropriate weight to assign to the opinion of a treating physician. *See Ferraro* 806 F. App'x at 14. As acknowledged by the Commissioner, however, "the ALJ did not explicitly consider all regulatory factors when determining the weight given to the opinion of a treating source," that is, Dr. Mathew. Def.'s Opp'n and Cross Mot. at 29. Instead, the ALJ decided to give Dr. Mathew's opinion "'little weight" because it went to the issue of disability and because it was inconsistent with the record.

*See* Tr. at 16.

To the first point, this Court is in agreement; "a treating physician's statement that the claimant is disabled cannot itself be determinative." *Caraballo,* 2020 WL 9816013, at * 7.  To the second point, the Court need not reach the issue of whether Dr. Mathew's opinion was supported by the record because the ALJ did not properly analyze and explain his reasons for giving Dr. Mathew's opinion little weight. *See Craig* 218 F. Supp. 3d 266.  Indeed, a searching review of the record shows that the only *Burgess* factor the ALJ seemed to examine was the consistency of the opinion with the remaining medical evidence, insofar as he found Dr. Mathew's opinion to run counter to an October 2016 examination by Dr. Mathew himself, the October 2016 CE by Dr. Basnayke, and the February 2017 examination by Dr. Gerold in connection with Plaintiff's lipoma removal surgery. *See* Tr. at 16.

Dr. Mathew is a board-certified neurologist who has been treating Plaintiff since January 2008. *See* Pl's 12(c) Mot. at 22.  However, the ALJ failed to weigh the impact that Dr. Mathew's almost monthly observations of Plaintiff, sustained over the course of more than a decade, had on the merits of his opinion. *See Craig* 218 F. Supp. 3d at 266 (citing *Santiago v. Barnhart*, 441 F.Supp.2d 620, 629 (S.D.N.Y. 2006) ("The Treating Physician Rule recognizes that a physician who has a long history with a patient is better positioned to evaluate the patient's disability than a doctor who observes the patient once for the purposes of a disability hearing.").  Moreover, there is no evidence to suggest that the ALJ considered the specializations of any of the medical professionals in relation to what weight to give their respective opinions. *See Craig* 218 F. Supp. 3d at 266 (citing *Ramos v. Comm'r of Soc. Sec,* No. 13–CV–3421 (KBF), 2015 WL 7288658, at *7 (S.D.N.Y. Nov. 16, 2015) (remanding case because, in part, ALJ did not indicate what weight he assigned treating physician's medical opinion based on specialization); *Clark v. Astrue*, No. 08–

CV–10389 (LBS), 2010 WL 3036489, at *4 (S.D.N.Y. Aug. 4, 2010) (legal error where ALJ did not consider whether opinion was from a specialist)). Instead, the ALJ seemingly gave more weight to Dr. Basnayke, who is board-certified in family medicine and examined Plaintiff only once, *see* Tr. at 353, and Dr. Gerold, who is board-certified in surgery and only examined Plaintiff as it related to the performance of surgery to remove a lipoma from her back[5]. *See* Tr. at 15-16. The ALJ failed to explicitly consider all the regulatory factors required in making the determination to give the opinion of Plaintiff's treating physician little weight and further failed to develop the record to a sufficient extent to assure the Court that the treating physician rule was not traversed. *See Caraballo,* 2020 WL 9816013, at * 8.

Accordingly, this Court respectfully recommends that the Plaintiff's motion be GRANTED, to the extent that the case should be remanded to the ALJ for the purpose of sufficiently developing the record in accordance with the requirements of the Second Circuit precedent set forth in *Burgess,* 537 F.3d 117, and its progeny.

## IV.    CONCLUSION

This Court respectfully recommends that the Plaintiff's motion for judgment on the pleadings be GRANTED to the extent that the case be remanded to the ALJ, and that the Commissioner's cross-motion be DENIED.

### A.  Objections to this Report and Recommendation

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a

---

[5] The records related to the Plaintiff's examination by Dr. Gerold are printed on letterhead for "Long Island Surgery." *See* Tr. at 389. Plaintiff states that Dr. Gerold is board-certified in surgery. Pl.'s 12(c) Mot. at 15.

13

waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals.  *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x. 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x. 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

_____/s/_____

Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
        September 16, 2021